Filed 6/28/16  P. v. Johnson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAYVION TERRELL JOHNSON,<br><br>        Defendant and Appellant. | B259608<br><br>(Los Angeles County<br>Super. Ct. No. NA096374) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gary J. Ferrari, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Dayvion Terrell Johnson (defendant) appeals from the judgment entered upon his conviction of burglary, attempted robbery, and assault with a firearm. Defendant contends: (I) that the trial court erroneously denied his "*Faretta* motion" for self-representation;[1] (II) that the trial court abused its discretion by failing to conduct an investigation into the impartiality of one of the jurors; (III) that the trial court erroneously denied his request for a continuance due to a discovery violation; (IV) that the trial court erred by excluding a police detective's prior inconsistent statement; (V) that his second-strike sentence and five-year serious felony enhancement were unauthorized because (A) they were not alleged in an information, (B) the trial court did not grant express leave to amend the information to allege those enhancements, and (C) the trial court did not have authority to grant leave to amend the information after defendant had waived a jury trial on the prior-conviction allegations and the jury had been discharged; (VI) that the burglary sentence in count 1 must be stayed; and (VII) that the cumulative effect of all the asserted errors requires reversal. We find no merit to any of defendant's contentions, and affirm the judgment.

## BACKGROUND

Defendant was charged in count 1 with second degree commercial burglary, in violation of Penal Code section 459,[2] in counts 2 and 3, with attempted second degree robbery, in violation of sections 664 and 211, and in counts 6, 7, 8, and 9, with assault with a firearm, in violation of section 245, subdivision (a)(2).[3] The information further alleged the following enhancements: as to counts 2 and 3, that defendant personally used a firearm within the meaning of section 12022.53, subdivision (b); as to counts 3 and 7, that defendant personally inflicted great bodily injury upon Christopher Morris (Morris),

---

[1] See *Faretta v. California* (1975) 422 U.S. 806, 820-821 (*Faretta*).

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

[3] On the first day of trial, counts 4, 5, 10, and 11 were dismissed on the prosecutor's motion. A first amended information, omitting the dismissed counts was then filed.

within the meaning of section 12022.7, subdivision (a); as to counts 1, 6, 7, 8, and 9, that defendant personally used a firearm within the meaning of section 12022.5, subdivision (a); and as to counts 1, 2, 3, 6, 7, 8, and 9, that defendant had suffered two prior convictions for which he served prison terms within the meaning of section 667.5, subdivision (b).

On June 3, 2014, defendant waived a jury trial on the prior convictions. On June 5, 2014, a jury found defendant guilty of all seven counts as charged, and found true the firearm and great bodily injury allegations. A court trial on the prior convictions was continued to August 19, 2014.

On August 19, 2014, a second amended information was filed, but does not appear in the clerk's transcript. In discussions with the court, however, the parties agreed that the second amended information alleged the two prior convictions in case No. TA081856 were violations of Health and Safety Code sections 11351.5 and 11359, with an additional allegation that the violation of section 11351.5 included a true finding under section 186.22, making the offense a "strike" within the meaning of the "Three Strikes" law, section 1170.12, subdivision (b), as well as a serious felony within the meaning of section 667, subdivision (a).[4] On October 10, 2014, the date set for a court trial on the prior convictions and sentencing, defendant waived his right to a trial on the prior convictions, and admitted that in case No. TA081856, he was convicted on February 3, 2006, of a violation of Health and Safety Code section 11351.5, with a true finding under section 186.22, subdivision (b)(1)(A), as well as a conviction of a violation of Health and Safety Code section 11359. Defendant also admitted that in case No. LA063690, he was convicted of a violation of section 273.5.

The trial court sentenced defendant to a total of 23 years 4 months in prison. The court selected count 7, assault on Morris with a firearm, as the principal term, and imposed the high term of four years, doubled as a second strike to eight years, plus four years under section 12022.5, subdivision (a), three years under section 12022.7, and five

---

[4]     See section 1192.7, subdivision (c)(28).

3

years under section 667, subdivision (a)(1). As to count 6, assault with a firearm upon Zane Lopez (Lopez), the court imposed a consecutive one-third of the middle term, doubled to two years, plus one-third the middle firearm enhancement of one year four months. The court imposed a total term of 32 months plus 10 years as to each of the attempted robbery convictions (counts 2 and 3), and stayed execution of both terms pursuant to section 654. The terms imposed on the remaining counts were ordered to run concurrently to the principal term.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

At approximately 12:23 p.m. on July 13, 2013, three men entered the Long Beach arts and crafts store owned by Lopez. Lopez testified to the events that ensued and narrated the video taken from the store's surveillance cameras. Lopez's children were in the back room where one of the men, later identified as defendant, followed Lopez. Defendant hit Lopez with a gun and pushed his son to the floor. Defendant then left the back room with his gun in his hand. Lopez and his children escaped through the back door and asked a neighboring shopkeeper to call the police.

Lopez employed Morris to make the incense sold in the shop. Morris testified that he was working outside the shop at his cart when the three men entered the store and spent a few minutes inside. Morris narrated the part of the surveillance video which showed his interaction with the men, as it was played for the jury. This part of the video began at 12:28 p.m., a few minutes after defendant had taken Lopez to the back room. When one of three men came back outside to buy a pack of incense, Morris took his money, put it on the counter inside the store, and assisted one of the others with incense. As Morris headed back outside, two of the men pulled him back into the store. Morris struggled with the two men, who wrestled him backward until he hit a wall. It was then the man Morris later identified as defendant came out of the back room with a gun and pointed it at Morris. As Morris attempted to pull one of the men in front of him as a shield, defendant hit Morris on the head with the gun about five times. Morris suffered

4

an injury that required staples to close and left him with recurring headaches and memory loss.

Acupuncturist Deok Sang Yu (Yu), whose clinic was next door to Lopez's shop, testified to hearing unusual loud noises, which caused him to look next door where he saw the glass door closed, being held shut by a man. When Yu tried to open the door, he saw a man on top of and holding another man. When Yu saw a gun, he ran away, but was able to see three men rushing to a truck parked in front of the clinic. Yu wrote down the license plate number before the truck sped away.

Investigating officer, Detective Fermin Gonzalez, testified that the police later found the truck parked on a street, set up surveillance, and waited until several men, including defendant, got into the truck. Defendant and another suspect identified in the crime were arrested. The third suspect was not found.

**Defense evidence**

Marianne Shea, Los Angeles County Sheriff's Department Senior Criminalist and expert in DNA analysis, testified that she conducted DNA analyses of the items of evidence found at the crime scene. She compared the DNA recovered from the items to defendant's DNA profile, and did not find a match.

Dr. Robert Shomer testified as an expert witness on factors involving perception, memory, and eyewitness identification. He explained that eyewitnesses typically had greater difficulty in identifying strangers, especially in stressful situations such as when a weapon is involved.

DISCUSSION

## I. *Faretta* motion

Defendant contends that the trial court erroneously denied his request to represent himself, resulting in a violation of his Sixth Amendment right to self-representation. Defendant also contends that the trial court erred in finding that the motion was untimely and thus treating the ruling as a matter of discretion. He argues that his request for self-representation was unequivocal and timely under the circumstances.

The Sixth Amendment to the United States Constitution grants criminal defendants the right to counsel in all proceedings that may substantially affect their rights. (*Mempa v. Rhay* (1967) 389 U.S. 128, 133-134.) The right to counsel may be waived if the waiver is knowing and intelligent. (*Faretta, supra*, 422 U.S. at p. 807; *People v. Bradford* (1997) 15 Cal.4th 1229, 1363.) When a defendant in a criminal trial makes an unequivocal assertion of the right to self-representation within a reasonable time prior to trial, the right of self-representation is absolute. (*People v. Windham* (1977) 19 Cal.3d 121, 127-129 (*Windham*).) When the motion is untimely, even if unequivocal, it is within the trial court's discretion to grant or deny it. (*People v. Lynch* (2010) 50 Cal.4th 693, 721 (*Lynch*), overruled on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 636-643.) "[A] trial court may consider the totality of the circumstances in determining whether a defendant's pretrial motion for self-representation is timely." (*Lynch*, *supra*, at p. 726.)

"Unlike the right to representation by counsel, the '"right of self-representation is waived unless defendants articulately and unmistakably demand to proceed *pro se*."' [Citations.]" (*People v. Danks* (2004) 32 Cal.4th 269, 295 (*Danks*).) Thus, courts must draw every reasonable inference and indulge in every reasonable presumption against waiver of the right to counsel. (*Ibid*.) "'In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo.' [Citation.]" (*Ibid*.) We are not bound by the trial court's determination that the defendant unequivocally invoked his right to self-representation. (*People v. Boyce* (2014) 59 Cal.4th 672, 703.) The applicable standard of review for a trial court's determination of the timeliness of a *Faretta* motion is unclear, but as to both determinations, we review all the surrounding circumstances. (See *People v. Marshall* (1997) 15 Cal.4th 1, 25-26 (*Marshall*).)

Defendant was represented by the same deputy public defender from the preliminary hearing and arraignment in August 2013 until February 2014. On February 13, 2014, the date first set for defendant's jury trial, the public defender declared a conflict, and deputy alternative public defender (APD) F. Lacey informed the court that

defendant had expressed a desire to represent himself. Defendant confirmed to the court that he wished to represent himself and he was prepared to start trial that day. Defendant told the court that he intended to use the prosecution evidence in his defense, and to call just one witness. The trial court explained defendant's rights and obligations, as well as the perils of self-representation, and determined that defendant had not previously represented himself in court. The prosecutor pointed out that defendant had expressed concerns about DNA evidence, including the hope that it would exonerate him, but the results of DNA tests would not be available for three weeks. Defendant claimed his prior counsel had requested the DNA results and the prosecution had unreasonably delayed in submitting samples. After considering the advantages and disadvantages of a continuance or going to trial without the DNA results or the assistance of counsel, defendant conferred with APD Lacey. Thereafter APD Lacey informed the court that despite his explanations concerning the complexities of trial and the fact that the court would not help him, defendant remained "fairly certain of his desire to represent himself." Defendant agreed with APD Lacey's suggestion to set a pretrial conference in 30 days to permit his office (which was appointed) the chance to become familiar with the case and to obtain the DNA analysis. At the continued pretrial conference, defendant appeared with APD Steve Kwon, who had been assigned to defendant's case.

APD Kwon represented defendant at four more court hearings between March 13 and May 27, 2014. On May 27, the day set for trial, defendant sought appointment of a new counsel because defendant was dissatisfied and thought the results of four DNA analyses had been withheld from him. Defendant was also unhappy because his counsel refused to call defendant's alibi witness. (See *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).) After an in camera hearing in which defendant explained his reasons for the request, and defense counsel responded, the court denied the motion and trailed the trial for two days.

On May 29, defendant brought another *Marsden* motion on the same grounds. Another in camera hearing was held during which defendant repeated his belief that DNA test results had been withheld, as well as his complaint that counsel would not call his

7

alibi witness. Defendant also explained that his cell phone had been taken from him at the time of arrest and defense counsel had not obtained telephone records to verify he was not near the crime scene at the time of the crime. After defense counsel explained his strategy and defendant's disagreement with it, the court again denied the motion.

After a discussion on the record regarding the DNA evidence, the cell phone evidence, and defense counsel's request for a continuance, defendant asked to speak again to the court in camera. When the trial court denied the request, defendant said, "You all denying my right to a writ?" Then, after defense counsel conferred with him, defendant said to the court, "You all can have this trial without me. I'm out of here." Defense counsel advised defendant to sit down, and the bailiff said, "Hold on a second," but defendant said, "Fuck this trial. And I love you baby," and "Be fair, be fair with me," as he left the courtroom. When defendant later reentered the courtroom, the court informed him he had the right to waive his presence at trial if that was his desire. Defendant explained he did not want to waive his presence, but he felt uncomfortable going to trial with present counsel. When the court refused to revisit its *Marsden* ruling, defendant asked, "Why I can't get new counsel? I already told you he called me a piece of shit and, ah, a coward. He disrespected my wife. He simply told me something about a statement she made." The court reiterated defendant's right to waive his presence, and defendant replied, "I'm not wavering [as spoken] my rights. I'm just not going to trial with this counsel." As the court was explaining that defense counsel would be representing him, defendant interjected, "You see him? You see him?" Defense counsel and defendant conferred quietly for a moment, then defendant said, "I'll go pro per, that's what I'll do, as a matter of fact"; and after another word with counsel, defendant said, "Continue my case so I can get all my discovery, all my copies, every transcript, including today. I go pro per." The court noted that the jury was on its way to the courtroom, and denied the motion.

The issue is whether defendant unequivocally asserted his right to self-representation. We apply "a 'stringent standard' for judging the adequacy of the defendant' s invocation because of the strong presumption against waiver of the right to

8

counsel"; thus, "an insincere request or one made under the cloud of emotion . . . [¶] . . . out of a temporary whim, or out of annoyance or frustration, is not unequivocal . . . . [Citation.]" (*Marshall, supra*, 15 Cal.4th at pp. 21, 23; see also *Danks, supra*, 32 Cal.4th at pp. 295-296.) Even when a request is expressed affirmatively and with certainty, it is not unequivocal where the record demonstrates, for example, that it was an impulsive response to the trial court's refusal to consider a *Marsden* request or an "'emotional reaction to the trial court's denial of a motion for substitute counsel . . . .'" (*People v. Valdez* (2004) 32 Cal.4th 73, 99 (*Valdez*); *Danks*, at p. 296.)

Here, the record demonstrates that after the trial court denied two *Marsden* motions and refused to hear another, defendant reacted emotionally. He expressed his frustration with profanity and walked out of the courtroom, ignoring the advice of his counsel and the bailiff's direction to remain. When defendant returned to the courtroom, he made it clear he wanted to have substitute counsel by asking, "Why I can't get new counsel?" and by stating, "I'm just not going to trial with this counsel." When the court responded that there would be no substitute counsel, defendant said, "I'll go pro per, that's what I'll do, as a matter of fact." Defendant's statement was not a request. It more closely resembled the "blackmail" attempted after the denial of a *Marsden* motion in *People v. Lopez* (1981) 116 Cal.App.3d 882, 889. Indeed, defendant warned, "Continue my case so I can get all my discovery, all my copies, every transcript, including today. I go pro per." Like the defendant in *Lopez,* defendant's words were "at best equivocal and hardly an unqualified waiver since he only wanted to represent himself if the court would not give him another attorney." (*Lopez*, at pp. 889-890.)

Moreover, we agree with respondent and the trial court that defendant's request was untimely. Although there is no "single point in time at which a self-representation motion filed before trial is untimely," many cases have held that *Faretta* motions made on the "eve of trial" are untimely. (*Lynch, supra*, 50 Cal.4th at pp. 722-723, citing *Valdez, supra*, 32 Cal.4th at p. 102 [motion made "'moments before jury selection was set to begin'"]; *People v. Horton* (1995) 11 Cal.4th 1068, 1110 [motion made on the date scheduled for trial]; *People v. Clark* (1992) 3 Cal.4th 41, 99-100 [case continued day-to-

9

day with "jury selection set to begin at any time"]; *People v. Frierson* (1991) 53 Cal.3d 730, 742, [motion made on "the eve of trial"].)  However, "pertinent considerations may extend beyond a mere counting of the days between the motion and the scheduled trial date." (*Lynch, supra*, at p. 723.)

Although defendant's *Faretta* motion was made just before jury selection, he contends that under the circumstances, it was timely because he first requested self-representation over three months before trial commenced, and was then dissuaded by APD Lacey, who was then replaced by APD Kwon in an apparent "bait and switch maneuver."  To the extent that defendant is suggesting that the delay in making the second *Faretta* motion on the day of trial was the result of his reliance on the expectation that APD Lacey would represent him, the record shows otherwise.  Defendant was concerned with the absence of a DNA analysis, so he agreed to the appointment of the APD and to a 30-day delay to obtain the DNA analysis and to allow the APD to become familiar with the case.  When defendant appeared in court the following month with APD Kwon assigned to his case, defendant made no objection or any mention of an expectation that APD Lacey would be his lawyer.  APD Kwon then represented defendant for the next two and one half months and through four more court hearings, during which defendant neither renewed his *Faretta* motion nor requested substitute counsel.  On the day set for trial, defendant brought a *Marsden* motion for new counsel, and renewed the motion twice on the day trial began.  Only then did defendant renew his *Faretta* motion.  Under these circumstances we find the motion was untimely.

In ruling on an untimely *Faretta* motion, the trial court should consider such factors as "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham, supra,* 19 Cal.3d at p. 128.)  "[A] trial court's exercise of discretion in denying an untimely *Faretta* motion is properly affirmed if substantial evidence in the record supports the inference that the court had those factors in mind when it ruled.  [Citation.]" (*People v. Bradford* (2010) 187 Cal.App.4th 1345,

10

1354.) We are satisfied that the trial court here had those factors in mind: defendant's apparent reason for the request was frustration over the denial of his *Marsden* motions; in denying defendant's request for substitute counsel the trial court found that APD Kwon was providing effective and competent counsel; jury selection was about to begin; and granting the motion would require a continuance to obtain, in defendant's words, "all my discovery, all my copies, every transcript, including today." Upon reviewing all the circumstances, we find no abuse of discretion.

## II. Investigation of juror misconduct

Defendant contends that the trial court abused its discretion by failing to conduct an investigation into whether Juror No. 10 had made up his mind prior to deliberations, and whether he was in fact an impartial juror. Defendant argues, in effect, that a sua sponte obligation to exercise this discretion was triggered by a comment made by Juror No. 10 after the verdicts were recorded.

Before excusing the jury, the trial court asked Juror No. 10, "[Do] you mind if I make an observation, you're not going to get your feelings hurt?" Juror No. 10 replied, "I know what it's going to be." The court commented that Juror No. 10 planned to become a doctor and said, "I want you to tell me." Juror No. 10 replied, "Would it be that you know, like, I could tell like my mind was made up?" The court replied, "No, no - - Oh, man," and asked, "What do doctors make you do all the time?" Juror No. 5 interjected, "Wait." Juror No. 10 understood the court had been referring to his tardiness and agreed, but noted that he had arrived on time that morning. The court replied, "That's good," and then thanked the jury and excused them.

Defendant has cited no authority which would require or permit the trial court to conduct, on its own motion, a postverdict investigation into possible juror misconduct. Citing *People v. Hedgecock* (1990) 51 Cal.3d 395 (*Hedgecock*) and *People v. Hayes* (1999) 21 Cal.4th 1211, defendant suggests that that the California Supreme Court enunciated such a rule. It did not; instead, the court explained that "if *during a trial* the court becomes aware of possible juror misconduct, it must 'make whatever inquiry is reasonably *necessary to determine if the juror should be discharged* . . . .' [Citation.]"

11

(*Hedgecock, supra*, at p. 417, italics added.) *After* trial, on the other hand, "when a criminal defendant *moves for a new trial* based on allegations of jury misconduct, the trial court has discretion to conduct an evidentiary hearing to determine the truth of the allegations. . . . [T]he defendant is not entitled to such a hearing as a matter of right." (*Id.* at p. 415, italics added.)

Here, it was unnecessary to resolve material, disputed issues of fact, as Juror No. 10's comment was not made during trial and defendant did not move for a new trial on the ground of juror misconduct. When juror misconduct comes to light postverdict, the trial court's obligation to make a reasonable inquiry arises only after the defendant has requested an evidentiary hearing to obtain support for a motion for new trial. (See, e.g., *People v. Leonard* (2007) 40 Cal.4th 1370, 1410; *People v. Carter* (2003) 30 Cal.4th 1166, 1216-1217.) Moreover, "[t]he hearing should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*Hedgecock*, *supra*, 51 Cal.3d at p. 419; see also *People v. Hayes, supra*, 21 Cal.4th at p. 1255.)

Juror No. 10's comment did not demonstrate a strong possibility of juror bias, as defendant contends. Defendant *assumes* that Juror No. 10 made up his mind about guilt prior to deliberations. However, the juror did not say what he made his mind up about or when he did so. "[I]t is not prejudging for a juror to form an opinion about the proper verdict before deliberations begin, provided that the juror's opinion is based on the evidence presented at trial and not on extrinsic matters. [Citations.]" (*In re Bolden* (2009) 46 Cal.4th 216, 226; see *People v. Leonard, supra*, 40 Cal.4th at p. 1412.) Inquiry into Juror No. 10's mental processes would not have produced admissible evidence, and questioning each other juror to determine whether Juror No. 10 expressed this thoughts in more detail would probably not have been admissible. (Evid. Code, § 1150; *Hedgecock,*

*supra*, 51 Cal.3d at pp. 418-419.)  It would in either event have been a prohibited "fishing expedition" to search for possible misconduct.  (*Id*. at p. 419.)

Moreover, the inquiry would have been a purely academic fishing expedition. Defendant has not suggested a remedy if the trial court had conducted an investigation and found prejudicial juror misconduct.  A trial court has no authority to grant a new trial on its own motion.  (*People v. Masotti* (2008) 163 Cal.App.4th 504, 508; see *People v. Clark* (2011) 52 Cal.4th 856, 979, fn. 36.)  Furthermore a trial court may not grant a motion for new trial on a ground not raised in the defendant's motion.  (*Masotti, supra*, at p. 508.)  It follows that as the trial court had no reason to inquire into possible juror misconduct sua sponte, it did not err in failing to do so.

### III.  Denial of continuance

Defendant contends that the trial court erroneously denied his request for a continuance in order to investigate data related to defendant's cell phone.  Defendant brought the motion after his counsel and the prosecutor learned on the first day of trial that the police had taken a cell phone from defendant at the time of arrest, but failed to book it into evidence or inform counsel.[5]  Defendant also complains that the prosecution failed to turn over a six-pack photo array shown to victim Morris, as well as supplemental police reports prepared by Detective Gonzalez; and that both omissions amounted to a violation of the prosecution's constitutional duty of disclosure as stated in *Brady v. Maryland*  (1963) 373 U.S. 83 (*Brady*).  Defendant further contends that the failure to turn over the cell phone was not only *Brady* error, but also a statutory discovery violation and a violation of his federal due process rights, in that it denied him a fair opportunity to prepare his defense.

---

[5]     Defendant contends that the disclosure was first made during the afternoon session as the morning was taken up with motions in limine and jury selection.  In fact, the disclosure was made in the morning during motions in limine.

As respondent notes, it is unclear whether defendant seeks reversal due the denial of a continuance or due to *Brady* error.**6** Regardless, we agree with respondent that whether defendant is challenging the denial of a continuance or the nondisclosure of evidence, his contentions have no merit.

Though defendant contends that reversal of his conviction would be the appropriate remedy for a *Brady* violation, he was aware of the existence of his cell phone prior to trial. Defense counsel and the prosecutor represented to the court that defendant's wife had tried to retrieve the phone from defendant's personal effects after his arrest but it had been taken by the police. It is not *Brady* error to fail to disclose evidence that was known, or should have been known to the defendant prior to trial, as "evidence is not suppressed unless the defendant was actually unaware of it and could not have discovered it '"by the exercise of reasonable diligence."' [Citations.]" (*People. v. Salazar* (2005) 35 Cal.4th 1031, 1049.)

Moreover, the trial court found that the cell phone records would not be relevant without some evidence that defendant carried the phone at the time of the crime, which was not the same day as his arrest. Defense counsel merely argued that defendant's cell phone records might show that his cell phone was not near the crime scene during the relevant time, but made no offer to prove that he had his cell phone with him at the relevant time. "*Brady* . . . does not require the disclosure of information that is of mere

---

**6** Indeed, defendant's arguments contain comingled points. The heading for this section of the opening brief states that reversal is required "because the trial court erroneously denied appellant's motion for a continuance, after the prosecution's *Brady* violation, in derogation of his right to due process and a fair trial." However, defendant concludes his argument as follows: "The government's failure to produce the evidence of the very existence of the cell phone in a timely manner was *Brady* error requiring reversal per se." The heading for defendant's argument in reply states, "Prosecution's failure to turn over potential exculpatory evidence violated appellant's right to a fundamentally fair trial." However, defendant concludes his argument on this point as follows: "For the reasons given above, this court should find that the trial court's failure to grant a continuance in order to investigate the data contents of appellant's cell phone, was reversible error, and should reverse the judgment of conviction and order a new trial."

speculative value." (*People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1472.)  Rather, the Constitution requires disclosure only of material evidence; thus, "a violation occurs '"only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different." [Citations.]  The requisite "reasonable probability" is a probability sufficient to "undermine[] confidence in the outcome" on the part of the reviewing court.'  [Citation.]"  (*People v. Salazar*, *supra*, 35 Cal.4th at pp. 1049-1050; *Kyles v. Whitley* (1995) 514 U.S. 419, 434-437.)

Defendant also suggests that a continuance would have been an appropriate remedy for a statutory discovery violation.  A continuance may be granted in the trial court's discretion upon a showing of good cause and diligence, or as a sanction for a discovery violation.  (See *People v. Riggs* (2008) 44 Cal.4th 248, 296; § 1050, subd. (e); § 1054.5, subd. (b).)  The court's discretion is broad and will not be disturbed absent a clear showing of abuse.  (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.)  Defendant did not request a continuance due to the missing photo array or police report, and he cannot demonstrate an abuse of a discretion he did not ask the court to exercise.  (See *People v. Burns* (1987) 196 Cal.App.3d 1440, 1455.)  Further, defendant did not demonstrate that he ever requested that the cell phone be turned over either prior to trial or once he learned of its location in Detective Gonzalez's case file, as required in order to obtain discovery sanctions.  (See § 1054.5, subd. (b).)  Nor has he suggested that he sought discovery of the cell phone at any time prior to the verdict.[7]

Materiality of the evidence must be shown to recover sanctions for state law discovery violations.  (*People v. Zamora* (1980) 28 Cal.3d 88, 100.)  It is also a component of good cause for a continuance under section 1050, subdivision (e).  (See *Jensen v. Superior Court* (2008) 160 Cal.App.4th 266, 270.)  An erroneous denial of a discovery sanction does not require reversal unless defendant shows prejudice under the

---

[7]     Defendant mentioned the nondisclosure of the cell phone whereabouts as one of the grounds for his motion for new trial, but did not claim that discovery of the phone was requested prior to verdict and did not lodge a discovery motion until the date the new trial motion was heard, four months after the verdict.

standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, by demonstrating a reasonable probability that the omission affected the trial's result. (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1135 & fn. 13, overruled on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) The *Watson* standard applies as well to the denial of a motion for continuance. (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1549.)

Defendant has made no showing of prejudice or materiality. He merely argues that the cell phone records might have contained text messages or other evidence that was potentially exculpatory if corroborated by the testimony of an expert witness or an alibi witness.[8] Speculation does not demonstrate materiality for purposes of *Brady*. (*People v. Jenkins, supra*, 22 Cal.4th at pp. 954-955.) Nor is speculation sufficient to establish a reasonable probability under the *Watson* standard. (See *People v. Gonzales* (2012) 54 Cal.4th 1234, 1254.) In sum, defendant has not demonstrated error, abuse of discretion, or prejudice.

**IV. Impeachment**

Defendant contends that the trial court erred in refusing to allow him to impeach Detective Gonzalez's credibility with a prior inconsistent statement made to Williams during a postarrest interview. Defendant's offer of proof was the following during a postarrest interview: "I told Williams about the evidence found and the DNA on the hat which fell off his head. Williams continued saying that was not him." Defendant reasons that this statement would have eroded Detective Gonzalez's credibility because the only hat found at the scene, a Blue Jays baseball cap, did not contain a DNA match to Williams, and there were inconsistencies in the police reports relating to the identification of the suspects. The prosecutor represented to the court that Detective Gonzalez would testify that he never intended the interview statement to be truthful, but intended it as a ruse to provoke a response from Williams.

---

[8] Defendant contends that his wife would have testified that he was not involved in the incident. However, defense counsel stated that he did not call her because she was only able to say that defendant was usually home on the weekends.

16

Defendant suggests that the trial court was required to admit the impeachment evidence because it was admissible under an exception to the hearsay rule and it bore on the issue of credibility.  Relying on *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680, defendant contends that the exclusion of the evidence amounted to an infringement of his Sixth Amendment right of confrontation.  "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and [that a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination."  (*Ibid.*)

A prior inconsistent statement is admissible under the hearsay exception of Evidence Code section 1235 to impeach the credibility of a witness who has given contrary trial testimony.  (*People v. McKinnon* (2011) 52 Cal.4th 610, 672.)  However, "'not every restriction on a defendant's desired method of cross-examination is a constitutional violation.  Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance.'  [Citation.]"  (*People v. Ayala* (2000) 23 Cal.4th 225, 301.)  "'[T]he latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.  The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.'  [Citation.]"  (*Ibid.*)  "'Although . . . a criminal defendant has a constitutional right to present all relevant evidence of *significant* probative value in his favor [citations], "[t]his does not mean that an unlimited inquiry may be made into collateral matters; the proffered evidence must have more than 'slight-relevancy' to the issues presented." [Citation.]'  [Citation.]"  (*People v. Homick* (2012) 55 Cal.4th 816, 865.)

Here, the trial court excluded the proffered evidence upon finding that it was not material, relevant, or probative.  As respondent observes, defendant attempts to demonstrate the relevance of the Williams interview to the issues presented at trial by

making a confusing and tenuous connection to Detective Gonzalez's testimony that he and another officer had used different numerical shorthand for the suspects in their separate police reports. Detective Gonzalez designated defendant as suspect No. 1, Williams as suspect No. 2, and the suspect who was still at large as suspect No. 3, while another officer numbered the suspects 1, 2, and 3, but not in the same order. In his trial testimony, Detective Gonzalez pointed out the suspects in the surveillance video, indicating that suspect No. 3 was the suspect wearing a Toronto Blue Jays baseball cap. However, defense counsel did not make clear how the two officers' different labeling methods bore any relationship to the false hat claim made by Detective Gonzalez in the Williams interview, and defendant fails to clarify the relationship here. Moreover, the detective's numbering of the suspects was not inconsistent with his own testimony, but with *another* officer's numbering of the suspects, and defense counsel was not precluded from cross-examining Detective Gonzalez about that inconsistency. We agree with respondent that defendant has demonstrated no relevant connection between the officers' numerical shorthand, Detective Gonzalez's belief about who did or did not wear the Blue Jays cap, and the detective's interrogation tactic in the Williams interview.

Defendant suggests that *if* the jury did not believe that the statement to Williams was a ruse, it would *then* show that Detective Gonzalez had falsely accused Williams, which would *then* permit the jury to infer that he was not believable. Such speculative inferences can have little, if any, probative value or relevance to the issues presented. (See *People v. Babbitt* (1988) 45 Cal.3d 660, 681-682.) Moreover, as defendant did not lodge the interview, it is not part of the record, and in argument to the court, defense counsel did not indicate the date of the interview. We thus presume that the date of the Williams interview and the context of the statement would support the trial court's ruling. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) Whether the statement was a lie or Detective Gonzalez's actual belief, the accusation of a suspect in the course of the early stages of an investigation could give rise only to irrelevant speculation regarding the detective's credibility.

We conclude that defendant has failed to establish constitutional error or demonstrate that the trial court abused its discretion in excluding the evidence.

## V. Second amended information

Defendant contends that his second-strike sentence and five-year enhancement were unauthorized because they were alleged in a nonexistent second amended information that the trial court did not expressly grant leave to file. Defendant also contends that the trial court did not have authority to grant leave to amend the information after defendant had waived a jury trial on the prior conviction allegations and the jury had been discharged.

### A. *The second amended information existed and was filed with leave of court*

First, we reject defendant's premise that the two challenged enhancements "were never a part of the accusatory pleading lodged against [him]," and that because the second amended information is missing from the superior court file, it must be presumed not to have been filed and to be nonexistent. We begin with the principle that error is not presumed from a silent record. (*Denham, supra*, 2 Cal.3d at p. 564.) "The defendant has the burden of showing the record is inadequate to permit meaningful appellate review. [Citation.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 858.) This burden is not met "simply citing an administrative dereliction," but defendant must demonstrate that the record could not have been reconstructed. (*People v. Coley* (1997) 52 Cal.App.4th 964, 970.) Defendant has not met his burden.

The second amended information is not in the appellate record and was not found in the superior court's file despite defendant's several requests to the superior court clerk. However, in discussions with the trial court on August 19, 2014, both counsel and the court agreed that a second amended information had been filed.[9] It is apparent from the record that defense counsel received a copy of the second amended information, as he described it to the court and pointed out a typographical error in the title. "Second" had

---

[9] On October 10, 2014, the court noted that the minutes of August 19, 2014, were missing from the superior court file. Minutes were then prepared and filed on October 28, 2014, but failed to mention the amended information.

19

been typed in but crossed out, and "First" had been rewritten on it.  As there was already a first amended information in the record, the court and the prosecutor agreed with defense counsel that the newly filed amended information was in fact a second amended information.

Although the record reflects that defense counsel and the prosecutor each had a copy of the second amended information, defendant does not claim to have tried to obtain one of those copies or to prepare an agreed statement.  We thus cannot presume that the second amended information was nonexistent, or that it was not filed on August 19, 2014.

Moreover, despite the confusing state of the record, it is discernible from the transcript of the oral proceedings that the amendment did not add any additional prior conviction.  Instead it made a minor correction to one of the prior convictions already alleged in the original information and first amended information, by changing the violated code section from 11351 to 11351.5.  Thus, this was not truly a previously unalleged prior conviction.  The only additional allegation in the second amended information was that the prior conviction included a true finding under section 186.22, and was thus a serious or violent felony as defined in section 1192.7, subdivision (c), for purposes of sections 1170.12, subdivision (b)(1), and 667, subdivision (a).  Further explanation of the allegations were made on October 10, 2014.  First, the prosecutor read the strike allegation:  "[A]s to the charge under the strike law the [section] 1170.12(b), it is alleged in the first [*sic*] amended information that in case number TA081856 that you suffered a conviction of Health and Safety Code section 11351.5 and also the enhancement allegation of Penal Code section 186.22(b)(1)(A) on February 3, 2006."[10] After defendant entered his admissions, the trial court informed the prosecutor that he had neglected to read the allegation regarding the five-year enhancement.  The court pointed out that on page 5 of the second amended information the strike prior was also alleged to be within the purview of section 667, subdivision (a).

---

[10]     Later in the hearing, the prosecutor clarified that it was the second amended information, the copy with the typographical error and a file date of August 19, 2014.

20

Given such circumstances, not only do we disagree with defendant's contention that the two challenged enhancements "were never a part of the accusatory pleading lodged against [him]," we consider it disingenuous.

### B. *No express order was required*

We next reject defendant's contentions that the prosecution merely *attempted* to amend the information on August 19, 2014, and that the court was not authorized to grant leave to file a second amended information except by express order.

Defendant relies upon the following language of section 969a: "Whenever it shall be discovered that a pending . . . information does not charge all prior felonies of which the defendant has been convicted either in this State or elsewhere, said . . . information may be forthwith amended to charge such prior conviction or convictions, and if such amendment is made it shall be made upon order of the court." Placing emphasis on "it shall be made upon order of the court," defendant suggests that this language requires an express order.

On the contrary, the form of the order is not specified in the statute. In general, as well as in the case of an amendment authorized by section 969a, the trial court may hear an oral motion to amend and may amend an information on its own motion; and where an amended information was filed in open court, it is presumed to have been filed pursuant to leave of court, even where the minutes of the court do not so state and no order explicitly approves its filing. (*People v. Leonard* (2014) 228 Cal.App.4th 465, 477.)

Referring to the trial court's statement at the August 19, 2014 hearing, that it would defer ruling on leave to file the second amended information, defendant appears to suggest that the absence of an express ruling must be deemed a denial. However, the court deferred the ruling in order to give the defense an opportunity to research whether the amendment was appropriate. The court added: "I think it is. But if it is appropriate, I will proceed on that amended information that it is a strike." The parties then agreed to return on October 10, 2014, for a court trial on the prior convictions and for sentencing.

It is the defendant's burden to object or otherwise call to the court's attention that an amendment would prejudice his rights. (*People v. Lewis* (1983) 147 Cal.App.3d 1135,

21

1140.)  Further, to preserve a claim that the court erred in granting leave to file the amended information, defendant must object to the filing on the same ground to be urged on appeal.  (*People v. Spencer* (1972) 22 Cal.App.3d 786, 799-800.)  Defendant did not object to the amendment on August 19, 2014, and he appeared with counsel on October 10, 2014, without having filed a demurrer or other objection to the second amended information.  Even where no express order is entered allowing an amended information, a failure to object amounts to consent to its filing.  (*People v. Beck* (1945) 71 Cal.App.2d 637, 641.)

Not only did defendant fail to object to the filing of the amended information during the nearly two months which the court gave him to do so, he did not object on October 10, 2014, until after he waived a trial and admitted the alleged prior convictions.  Even then, defendant did not object on the grounds urged here.  In the October 10 hearing, after the prosecutor read the amended allegation that defendant had been convicted in case No. TA081856 of a violation of Health and Safety Code section 11351.5, with a true finding under section 186.22, subdivision (b)(1)(A), defendant stated that he "partially" admitted the conviction.  Defense counsel explained that defendant was admitting the prior conviction, but was disputing whether the true finding under 186.22, subdivision (b)(1)(A), qualified the conviction as a strike.  Defendant then admitted that prior conviction as well as the two alleged prior convictions which had not been amended.  When the trial court reminded the prosecutor that he had not read the amended language alleging that the Health and Safety Code section 11351.5 conviction also subjected defendant to a five-year enhancement under section 667, subdivision (a), defense counsel objected that defendant had not been arraigned on that amendment.  Thus, the court then said to defense "I'm assuming you client is going to deny the [section] 667(a) prior."  Counsel replied that he did.

The trial court then heard argument on whether the prior conviction under Health and Safety Code section 11351.5 qualified as a strike, and whether it also qualified for a five-year enhancement under section 667, subdivision (a).  Defense counsel stated, "I agree that's the law"; and he added, "We're objecting to the amendment primarily."  No

other ground was stated, and the trial court replied that it had already allowed the amendment. The court then found that defendant had admitted the prior conviction with the section 186.22 allegation, and that the conviction was a strike and came within the purview of section 667, subdivision (a).

In sum, the second amended information was filed and defendant was given nearly two months to object to its filing; defendant did not object, but instead waived trial on the prior convictions and admitted them, as well as the amended allegation that there had been a true finding under section 186.22 as to the Health and Safety Code section 11351.5 conviction. Defendant's only objection was to the amended legal effect of the prior conviction, and on appeal, he does not contend that the trial court erred in resolving that issue against him. We conclude that the second amended information was in fact filed with leave of the trial court, and that defendant has not preserved for appeal any objection to the filing of the second amended information.

### C. No right to jury trial

Defendant contends that because the jury was discharged, the information could not be legally amended to add allegations that were not contemplated at the time of his jury trial waiver, and thus the imposition of the strike and five-year enhancements resulted in an illegal sentence.

He relies on *People v. Gutierrez* (2001) 93 Cal.App.4th 15, which held that defendant was denied his statutory right under section 1025, subdivision (b),[11] to have the same jury decide the truth of his prior convictions. In that case, after the jury had been discharged, the trial court allowed the prosecution to file an amended information adding a newly alleged prior conviction. (*Id*. at pp. 22-24.) The appellate court relied on *People v. Tindall* (2000) 24 Cal.4th 767 (*Tindall*), which held that section 1025, subdivision (b), prohibits amendments to allege prior convictions after the jury that

---

[11]     Section 1025, subdivision (b) provides that "the question of whether or not the defendant has suffered the prior conviction shall be tried by the jury that tries the issue upon the plea of not guilty, or in the case of a plea of guilty or nolo contendere, by a jury impaneled for that purpose, or by the court if a jury is waived."

23

decided the guilt issue has been discharged. (*Id*. at p. 782; *People v. Gutierrez*, *supra*, at pp. 22-23.)

Such cases have no application here as the second amended information did not add an additional prior conviction. It added the allegation that one of the already alleged prior convictions involved a true finding under section 186.22, with the legal effect of the conviction being whether it was a serious or violent felony as defined in section 1192.7, subdivision (c), for purposes of sections 1170.12, subdivision (b)(1), and 667, subdivision (a). While defendant may have a jury trial on the question of whether defendant suffered a particular prior conviction, it remains a question for the court whether that conviction met the statutory definition of a serious or violent felony. (*People v. Kelii* (1999) 21 Cal.4th 452, 454, 457.) "Accordingly, the statutory right to have a jury decide whether the defendant 'has suffered' (§§ 1025, 1158) the prior conviction does not include the inquiry whether the conviction qualifies as a strike." (*Kelii*, at p. 457.) Similarly, the serious felony finding required by section 667, subdivision (a), for the imposition of a five-year enhancement, is a legal question to be decided by the trial court. (*People v. Williams* (2002) 99 Cal.App.4th 696, 701.)[12]

When a prior conviction determination includes factual content, such as whether a burglary was a residential burglary, or whether prior convictions had been charged and tried separately, the question of whether the prior conviction was a serious or violent felony remains a court question so long as the fact is readily ascertainable upon examination of court documents. (*Kelii*, *supra*, 21 Cal.4th at p. 456.) Thus, if defendant had not admitted the section 186.22 finding, it would have been a legal issue for the court to determine from the record of conviction in case No. TA081856.

---

[12]    In *Tindall*, the California Supreme Court declined to consider whether a trial court could properly allow a postdischarge amendment to add prior convictions, when the only contested issue in the trial on the newly alleged prior convictions would be a legal issue for the court, and not the jury. (*Tindall, supra*, 24 Cal.4th at p. 773, fn. 4.) As no new prior convictions were alleged here, we need not consider the issue either.

24

It follows that even if defendant had not waived his right to have the same jury that found guilt also determine whether he had suffered the prior conviction in case No. TA081856, it would remain for the court, not the jury, to determine whether the conviction qualified as a serious or violent felony as defined in section 1192.7, subdivision (c), for purposes of sections 1170.12, subdivision (b)(1), and 667, subdivision (a). Under such circumstances, the trial court did not err in permitting the postverdict, postdischarge filing of the second amended information. Defendant's sentence was proper.

## VI. Section 654 stay

Defendant contends that the trial court erred in imposing punishment for both the burglary (count 1), as well as the two attempted robberies (counts 2 & 3), and that the burglary sentence must therefore be stayed pursuant to section 654.

"Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.) The accepted "'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' [Citations.]" (*Jones*, at p. 353.) As respondent observes, the trial court did not order the imposition and execution of all three sentences. The trial court imposed and stayed sentences on the two attempted robbery counts, and ran the burglary sentence concurrently with the principal term.

Defendant expressly acknowledges that the sentences imposed for the attempted robberies charged in counts 2 and 3, were stayed pursuant to section 654, and that the sentence for the burglary in count 1 was ordered to run concurrently. Defendant also expressly asserts that "section 654 requires that all *but one* count be stayed at sentencing" (italics added), and he does not contend that the burglary count should have been stayed *instead* of the attempted robbery counts. Under defendant's own reasoning, there was no error.

25

## VII.  No cumulative error

Defendant's final contention is that the cumulative effect of all the asserted errors requires reversal.  "As we have found no substantial error in any respect, this claim must be rejected."  (*People v. Butler* (2009) 46 Cal.4th 847, 885.)

### DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT